May it please the Court, Andrew Dewey for Albany Mayor Rochelle Nason. With the Court's permission, I'll reserve five minutes for rebuttal. The District Court, the Lions Club of Albany, the City of Albany, and Mayor Nason all agree that the cross display in Albany Hill Park is unconstitutional. The question is what to do about that. What the City, the Mayor, and almost everyone who has spoken up at City Council meetings on this subject have said should be done is remove the cross. That would be done but for an easement that the Lions Club holds and says is valid and enforceable. It is neither valid nor enforceable under California property law. I think the simplest issue for this Court to focus on is enforceability, because to be enforceable under Bakush v. Blankenship, under Teachers v. Forlotti, and the Hill case, to be enforceable, the use of the easement must comply with laws applicable to the land which it burdens. Here the use is to maintain a solely religious symbol for religious purposes on that land, and that land is owned by the City. That violates- Well, didn't the City buy the land knowing that the cross was there and fully aware of the easement? It was on constructive notice of the easement. We don't know from the record if there was actual knowledge, but that really doesn't matter because it's- You're stuck with the easement. Yes. You should have done a more thorough job if you were concerned about whether or not there was an easement. I have no argument for that. You check all the records. You check the title. You do whatever. It was in escrow. It was there for anyone to see. I'm not going to try to defend the City attorney's role at that time or the City council members. But I would suggest, Judge Paz, that that's your own- So you acquire this piece of land with an easement. Right. But that is true of Bacouche. That is also true of the Ferlattis. They knew that there was an easement burdening their land. Bacouche knew about this horse easement. The Ferlattis knew that supposedly there were going to be commercial deliveries on their section of the alleyway. They knew that, but they bought the property anyway. But the California Court of Appeals said in both cases it didn't matter. The fact is, that use doesn't comply with the laws applicable to those parcels of land. And if you want, even in more severe cases- But the only reason it doesn't apply is because it's owned by the City. Right. But as a private — it was not illegal — it was not illegal when it was owned by private properties. But remember now, that easement never burdened private property, never once. Well, that's not technically true, because the initial sale was not with the City. It was between two private parties, and then it was conveyed to the City. So the easement was part of the original conveyance between the two private entities. But that did not take effect until the close of escrow. Under the in-marriage of Miller case, nothing happens in escrow until the very end. And then everything happens simultaneously. So there was never a conveyance from the calls to the developer or anyone else. Everything happens simultaneously. And that you see discussed fully in Thompson v. Call, because that was actually the kind of argument the calls were making. It says, well, we didn't sell land to the City. We sold it to the developer. And what the Court of Appeal and the Cal Supreme Court said is, no, no, no, no, no. The developer was just a conduit. This was all part of a big multi-party transaction. And this was effectively a sale of the call's parcel of land from them to the City. And so, again, nothing, the calls never took the risk of burdening their property with that easement. If for some reason escrow hadn't closed, there would be no easement burdening their property. It only took effect when the deal closed, on August 24th, 1973. And so that's an important distinction to make, not just for this purpose, but also for why there was a no-aid clause violation. Because in effect, it was the City giving a real estate interest to the Lions Club for a sectarian purpose in violation of the no-aid clause. The no-aid clause specifically prohibits giving real estate, a real estate interest, to a religious organization or for a religious or a sectarian purpose. And that's exactly what this was. But it was done, and so what's the remedy then? If it was done and it was in violation of the California Constitution, where are we? It's invalid. It's invalid. But it's much like Justice Sotomayor. What case says that if property is given by a municipality in violation of the no-aid clause, that the remedy is to invalidate? I'm not aware of any cases involving property given by the no-aid clause. I am aware of a California contract case, which this Court, you might recall in the Paulson case on Bonk, just, Rawlinson, the one of the cases discussed in that majority opinion was County of Los Angeles v. Hollinger. And that was a contract case where the County of Los Angeles contracted with a parade organization to put together what was essentially a religious movie about a parade in the L.A. area. The parade association produced the movie per the contract, and when it was time to be paid, the auditor in L.A. said, not going to pay it. That would violate the no-aid clause. And the parade organization is like, you've got to be kidding us. We just made the movie. And the county officials were like, pay the people. They made the movie. Auditor says, no, I won't do it. The court of appeal upheld that and said, you can't pay a dime for that because that is a no-aid clause violation. So there you have real reliance, real performance under a contract, and the remedy was nothing. It was in real time. Now we're looking back at something that's already been effectuated. And the issue is, wouldn't that be a takings at that point? No, it would be no more a taking than if in a patent case before Judge Anello, the judge ruled that the patent is invalid and unenforceable. That's just bad news. It's not a taking of anything that was ever legitimately owned. Real property, usually if real property is taken by a municipality, there must be some compensation for it. You can't just void someone's property interest. But you're presuming the validity and enforceability of the real property when you say that. I would agree, yes. If this is a valid and enforceable easement, then, yes, the government can't just take it. It has to provide just compensation. But that — but there's a predicate question. Is it valid? Is it enforceable? It is neither. It is not enforceable under Bakush, Ferlati, and Hill. And that's only because you acquired it, right? I'm sorry? Because you acquired it. The fact that it's government land is what makes it unenforceable. So the city actually made the invalidity, so that it's now trying to use to take the property. That's not — like, you could say that about Salt Lake City in the first Unitarian case. They made it — the servitude restrictions there on free expression unenforceable because they're a city entity. But that's not really how the Tenth Circuit looked at it. And also, if I could talk about Barrows, remember now, Leola Jackson in that case in 1944 signed a contract with her neighbors agreeing whites only in this neighborhood. And then just five and a half years later, she goes right ahead and breaches it. And so you could say, well, wait a minute, you didn't have to reach that contract deal with your neighbors. You didn't have to burden your land. But what the Court of Appeal and ultimately the U.S. Supreme Court said is it doesn't matter. When it comes to remedies, fairness, we, the court, are not going to do something that frustrates a core constitutional purpose. In that case, it was the Equal Protection Clause. In this case, it's the Establishment Clause and, first and foremost, the no-aid and no-preference clauses of the California Constitution. Also — So let me — let me — what exactly did the district court do? Didn't the district court say that the easement that granted access to this cross was invalid? No, no — But then — but then refused — but then declined to grant any relief? As I read it, what Judge Alsop did was say that the easement — I don't know that he used the terms, but I think it's fair to say he says it's valid and enforceable, because if it weren't, then I don't think he would have been talking about any need to condemn the easement. What he's saying, though, is that there is an Establishment Clause problem with this display. And what's different about this case procedurally is, like, normally you would have some third parties sue a city, maybe, like, a church gets involved or something. This is different, because here the city of Albany is trying to do the right thing. It's trying to solve this problem before anything like that happens with third-party — Wait, but to some extent, you create — you help to create the problem. You're right. There's no question about that, Your Honor. But what do we do about that? Do the people — does the Albany community today have to compensate for a property interest that shouldn't be — Has the city offered to buy out the land, the parcel of land? I don't believe that that's happened. There have been some settlement negotiations. We resolved the claims against the city. But no, there's never been any condemnation proceedings. But that would be — No, I'm not — well, short of condemnation, why can't you buy the land? It's possible. And why couldn't Ms. Jackson just pay off the neighbors? What's the big deal? The big deal is that that will incentivize more such servitudes. But only if you — But you created — A lot — Yeah. You created the problem. Well, didn't she? I think it's fair to say she created the problem. It never would have been a problem if she hadn't agreed to that covenant in 1944. But the Supreme Court didn't say, sorry, tough luck. You know, there's your signature on the document. What the court said is that we're going to look at — A city is a little more sophisticated than a woman selling private property. But the district court said that the easement was valid ab initio, correct? Didn't the district court say that? I think that's right, yes. And I think it's — and if it didn't — if the judge didn't say enforceable as well, I think it's fair to infer it's also enforceable, according to the district court. Yeah, exactly. I thought — I thought the point was whether or not the easement was invalid initially. Well, those are both different points. I think that for them to resist our trespass and nuisance counterclaims, the easement must be both valid and enforceable. And I think enforceability under Baccusian for lobbyists — But I thought you said the easement was invalid from the beginning because it originally was given by the city as opposed to between private properties. Yes, that's a separate argument. And you don't — I don't understand how those arguments can be separate. Either it's valid or it's not valid. Right. And that hinges on whether I'm right about whether this was in effect. Using this Court's language in the Paulson case, where you were a part of, is this in effect — I don't think I was in the majority on that. No, you weren't. But, Judge, I don't think that you — it didn't seem to me that you and your fellow dissenters really disagreed with the No-Aid Clause test. You just disagreed with its application to that particular case. And so the — so that — these are different questions. So am I right that in 1973 this was essentially an improper gift of real estate to — for a sectarian purpose? That's a completely different question than under Bakush and Forlotti is, does this — the use in this easement comply with the laws applicable to the land? And — That's splitting hairs. I don't see it as all — I mean, it's — one is a very fact-intensive look at what that transaction was like in 1973. The other is really a simple question of taking the language of the easement and looking at the laws applicable to this land. Well, I don't see how you can argue that the easement is both valid and invalid at the same time. I'm arguing it's — it's — I'm just saying even assuming validity, it's unenforceable. That is invalid. I want to make that clear. This is an invalid easement. But even if you disagree with me on that, Your Honor, it is still unenforceable because, remember, in Bakush and Forlotti, those courts said the easements at issue there were valid but unenforceable. And so my point is that if you agree with me there, you say, okay, I'm not with you on validity, but I am with you on enforceability, then we are just on all fours with Bakush and Forlotti where they can't enforce this easement. And what that means is they're trespassing because the only way they can get out of the trespass is to say they're authorized to keep that — to maintain that cross. If they're not authorized and that's not an enforceable easement, then we can remove it right away. But also, there's another reason it's an unenforceable easement, and that is that they're being a State actor here. They are — under the Supreme Court's decision in Pleasant Grove v. Summum, they are taking the place of government with a permanent monument, a very large one, lit up at night at Easter and Christmas, and they're projecting their religious message to the whole community. That is exactly what government speech is. Government speech is the exclusive, traditional role of government. It's by definition that. I mean, you can't subcontract out government speech. It wouldn't be government speech if you do that. So under Summum, this is government speech. That is how a reasonable observer sees this cross. And so they are a State actor when they maintain this cross, and it's when they light it up at night at Easter and Christmas, and they are putting their words in the city's mouth. So that's a separate, additional reason why this is unenforceable, because they're directly violating — What's around the cross today? I'm sorry, what's the — What's the area like? Is it a park? Is it just a fine hill? It's an undeveloped hillside park. We actually had a field trip in the case, and there's a report on that, and we have it in the record. But it's an undeveloped, open-space park. Very little is there, a swing, and the cross, and not much else. That's it? And how extensive is the easement? It's not specified. It's just — see, it's referring to the existing cross, so that's the location of the cross by definition of where it was existing at the time. And then it provides ingress and egress to maintain it. So you have the cross — it's kind of in an open space. I can see it from my house two miles away in Berkeley, and especially when it's lit up at night. You can see it from the whole East Bay, practically. And so this is government speech that is being done against the wishes of Mayor Nason and the city government. That right there is a violation of the Constitution. They're responsible for it as a state actor. So what a strange thing it would be to say that they have an enforceable right to violate the Constitution, the state and federal Constitution. And again, with remedy, I just don't think you can find more compelling cases against Ms. Jackson — Well, under California law, could you condemn the easement? Yes. And I would — Why haven't you pursued that option? It's a very cumbersome and unknown expense. We don't know at the end of the day — I mean, how do you value an easement? First off, you've got questions about its enforceability, its validity. And at the end of the day, what's the fair market value to maintain a cross on — it's really hard. There are people who do that for you. I know there are people who do that. But my understanding of that process is it's very expensive, and you don't have any idea if you're the city what that dollar amount would be. But again, why should there be a penny? If this Court forces us down that road, you should expect more such easements. That's exactly the concern in Barrows, is that if — it really wasn't a concern in Barrows about the minority purchaser of the property. They're going to — they already moved in. What the U.S. Supreme Court was concerned about in Barrows was, looking forward, they would be creating an incentive to have more such servitudes if they enforce this one. And that's what this Court should be very alarmed about. If you open the door to this, you should expect more such cases coming up. But you actually opened the door to it. I agree. I agree we opened the door. But you're the ones with the final say about whether that's legit. It's not. Counsel, is it true that the district court found that the easement was between a private landowner and another private entity? Did the district court make that finding? I don't — that wouldn't be a factual finding. That would be more of a legal conclusion. I think it might have. But that's actually incorrect under the Marriage of Miller case. As I mentioned, there's no direct transaction until that escrow closes. And when that — I was just asking if the district court made that finding. So I guess your argument is, if the district court made that finding, it was an error. That's an erroneous way to look at it, yes, because that would be inconsistent with Thompson v. Call, which said you're putting essentially real estate forms over constitutional substance, well, in that case, Government Code 1090 and self-dealing. But those courts weren't going to be blind to the reality of what was really happening there. That was a sale of land from the Calls to the city. And this was not an easement grant, really, from the Calls to Lions Club. It was really the city that was giving up for real estate interest. And if I could preserve my time, I'd — Well, let me just ask you one other question. Did you make the Government Act, the State Act, an argument before the district court? It's — I don't think we specifically said State Act, but that's part of the enforceability argument, and it's largely in response to the district court's order. Remember, the district court three times said the Establishment Clause runs against the city, not the Lions Club. But when you come back, tell me, show me in the record where this argument was made before the district court. I don't think that we used the term State Act, but again, what I'm saying, Your Honor, is — Well, the concept was — was discussed with the district court. I won't use your time here, but when you come back, show me where that concept was raised to the district court. Okay. Signing judge and justices, may it please the court. My name is Robert Nichols, and I represent the Albany Lions Club. I'd like to fill out some of the questions that you — that two of the justices asked regarding the history of this case. Forty-eight years ago, the Lions Club built this cross using its own money on private land owned by Hubert and Ruth Call. Two years after that, the city was involved in a development where the city wanted property dedicated to the city by the developer. Call and the developer negotiated. Call said, I'm not going to sell my land unless the Lions Club cross can remain. They reached an agreement. The Lions Club received an easement, and the developer received the balance of the land subject to that easement. Opposing counsel says that none of that took place between the two private parties until escrow closed. So in essence, it was between the calls and the city. What's your response? Well, I have two responses. First of all, the next step was not that just happened. The city accepted the land from the developer. As the district court judge said, the city would have — should have rejected it. And had the city rejected it, the property would have remained in private land — in private land by the developer. And they could have worked out with the calls whatever deal they wanted. Instead, the city accepted the land. Now, the assumption here is that somebody did something wrong. And certainly it wasn't the Lions Club who weren't even involved except as a beneficiary of this transaction. The city may have known that it shouldn't accept property with a cross on it, or in the case of many of the situations that I see before this Court that are reported, the cities have accepted property which includes crosses. Let me — let me just — I just want to make sure I understand. The land where the cross is located, is it owned by the city? The city — there are two pieces of land that were put together. One of them was a 1.1-acre parcel owned by the calls, Herbert, Hubert, and Ruth. The other was a separate piece of land altogether. And the city, as a result of that development agreement, accepted the tall land and the other land and proceeded forward. The city — and I think this is — So the city — the city — you're telling me that the city owns the land on which the No. I'm not telling you that. The city owns, for want of a better term, the dirt subject to the easement — Okay. — which was placed on the land for the maintenance of the cross. Who actually owns the land where the cross is located? The city owns the dirt, and the Lions Club have an easement to maintain the cross there. Oh, I see. So the easement allows them to maintain the cross and to access the land to take care of it. That's correct. So that's what I see. And who knew what is somewhat — I mean, 48 years — beginning 48 years ago, and every Christmas and Easter thereafter, the Lions Club has lighted that cross, which, as counsel just admitted, is visible throughout the city. The city knew it was there. So when this was — this whole package was going through escrow, was it known to everyone that the easement would be granted? Well, the city — the cross is lit, as I've indicated. There is no evidence in the record as to what was known by everyone, but counsel admits that the city was charged with knowledge because they had access to the escrow reports, and they should have looked, and they should have made that determination. But they did not. Well, at some place, at some point or somewhere, some document contains this easement. Yes. Right? That was in escrow. It's an easement that was filed before the call property transferred to the developer. When was it recorded? It was recorded first in order, followed by the transfer of the call property to the developer, and then there's a subsequent transfer of property from the developer to the city. And that's all taking place on the same day? All taking place on the same day, and you can see — you should know that there was a California superior court case called Thompson v. Call, which was the result of Mr. Call, who was, in fact, also a member of the city council, having a conflict of interest. Right. Right. But the court made a number of findings of fact in that case, including that no one precipitated fraud and found that the transfer of the property with the cross was constitutional. It didn't violate the Constitution, any statute, or any decisional law. That was a finding of law by the California court — superior court, which was sustained by the California Supreme Court, and the United States Supreme Court denied certiorari on that case. Was the finding of the superior court that the transfer of the easement was between two private parties? No. The finding was that there was no constitutional violation. What did the recording say? The first thing that was recorded was the transfer of the property with the easement? I can't tell you that. Very, very first — I know I said the first thing, but in terms of Call, first the transfer of — and this is also in the superior court, findings of fact. Right. The superior court notes that the granting of the easement from Call to the Lion's Club was first. So that was from one private party to another private party? Absolutely. Okay. And then from that private — from a second private party to the city. So that's — your point is exactly well taken, and I wanted to clarify. So, I mean, do you agree that once the city acquired the easement with this cross on it, that there's a First Amendment violation? The district court judge found that when the city acquired the property, the city had a Establishment Clause violation. It had a problem, and it was the city's responsibility to correct its violation. The Lion's Club had the city — and the action of the city that is problematic, of they accepted this property with the cross and with the easement for the cross. And as a consequence, they need to bear the responsibility for their actions. And had they not accepted it, it would never have come into the city. There wouldn't be a violation. The other point that I think we've tried to stress in our brief is that there is no reported case that council cites or that I've been able to find that says that a Establishment Clause violation runs against a private entity. Every single case deals with a city that owns and possesses whatever the violation is, and they violate the Establishment Clause, and the orders are always that the city or the government entity correct that violation. In this case, the district court judge gave the city what is a reasonable option. It said, buy the easement or sell the property, but you can't own it. And that, frankly, honors the other constitutional rights that the members of the Lion's Club and the Lion's Club have. They have a right to their property and not to have property taken away from them because — without compensation. So you would agree that they could bring a condemnation action under California law? I believe that they can. I'm not a condemnation expert. I believe that the city can certainly purchase the property if they can pay the inappropriate fee. I would tell you what the Lion's Club — you know, someone might say this is about money. The Lion's Club wants to maintain a cross that it's maintained for 48 years. It doesn't have an objection to moving it to private property, as long as somebody pays the cost of acquiring that easement or that property and pays the cost of moving it and all the attendant expenses with that. But the Lion's Club wants to exercise this constitutional right of free speech and free exercise of religion to display a cross. And if the city is willing to — you know, is willing to pay so that the Lion's Club can obtain that, the Lion's Club aren't wed to this particular location for that cross. Is there a location nearby? There are vacant lots that are nearby, but they're not cheap. Well, nothing — land, I'm sure — land in that area is not cheap. In the city of Albany, the average house sells for around a million dollars, so a vacant lot is not going to be cheap. And there would obviously, because this is a hill, would be some significant reconstruction that was necessary in order to be able to plant a house without having other negative effects. I mean, there'd be some engineering involved. But, you know, that's the goal — that would be the goal of the Lion's Club. Do you agree that there's an establishment cost problem? I agree that the city has an establishment cost problem, but that's not — the fact that the city bought land or accepted land that had an easement for the Lion's Club is not a Lion's Club problem, and it's unfair to turn to the Lion's Club to redress that. I mean, I want to say that the city never took action to clarify this. There was the Thompson v. Call case that discussed this property in detail and highlights the cross on the hill, and yet the city took no action against the developer, the city took no action against the Lion's Club, and the statute of limitations for them to quiet title expired 40 years ago. And some of that causes problems because we don't know what the actual intent of the council members were. We don't know what the intent of the parties around this were. What we know is the Lion's Club got a property right, and the city wants to take it and deprive it of that property right because the city has an establishment cost violation. City can correct that. City should correct that. City should either give up the land, or city can buy it from the Lion's Club. And I honestly don't know the answers to whether or not an eminent domain action will lie. It's not what I do. I have no idea. I'm not a — Okay. I have no knowledge of — Well, I would not want to mislead the Court. The other point that I wanted — there are a couple of other points I want to address, if I may. I pointed out that there are no other cases that attempt to sanction a private entity for someone else's establishment clause violation. But there's been some discussion about the Burroughs case and whether or not this Court should apply that theory. I want to say to the Court that the — once again, the sides are turned around. Burroughs, the Court simply said, we're not doing anything. Here, the city wants this Court to order the Lion's Club to take down the cross. It wants the city — it wants the Court to order that the Lion's Club has no right to the property. That's not a neutral, no-action position. That's an affirmative-taking position, which is entirely different from the Burroughs situation. Well, I guess I would say, if the Court were to enter a declaration that the easement violates the establishment clause and is therefore invalid and therefore unenforceable, that they could just bar any access and that's it. It's not invalid because the only reason it's invalid is based upon the city's actions. The city essentially controls, by deciding to own and keep rather than sell or purchase, the establishment clause violation. It's an establishment clause violation that is the making of the cities and not the Lion's Club. And again, there is no case — Has the city ever said, we're not going to allow access? We're not going to allow access to the cross? The city sent a letter after some other litigation saying, we are not going to — we want you to remove it, but the city also provided a lock, a combination to the lock, to allow the Lion's Club to gain access. And it sent some letter with that saying, but by doing this, we're not waiving our rights. Wasn't there some point in time where there was a dispute regarding whether or not it was safe to run electricity to the cross and there was some barring of access during that period? There was no barring of access to the cross. What happened was that the city, in excess of its authority, asked PG&E to disconnect the utility line. The city mistakenly believed that the Lion's Club was responsible for the utility line from the point it left the pole until the point it left — it arrived at the cross. In fact, the law is, as the Public Utilities Commission would acknowledge, that PG&E is responsible and owns the utility line from the cross — from the pole to the point where it is taken into a — I'm sorry, the fuse box, if you will. And that's just flat law. The city violated its authority in asking PG&E to turn that power off, and when PG&E discovered that that was an error, they talked with the city, and the city subsequently recognized that and turned the power back on. There's a letter from the fire chief authorizing — recognizing PG&E's authority to do that and authorizing the city to turn on — or authorizing PG&E to turn on the power. So, yeah, there was some concern, but it was not a concern or problem for the Lion's Club or the PG&E, and the city, because they refused to turn the power on until that happened, was — the Lion's Club sued them for interfering with the easement, which they settled. Let me ask you a — what may appear to be a dumb question about the establishment clause. We've all assumed here that there is an establishment clause violation. Does this court have to so find to rule on this case? Do we have to decide, yes, in fact, there is an establishment clause violation? I — the district court found that the city has an establishment clause violation, and we have not appealed and we do not dispute the findings of the district court. In fact, in its application of the — its determination of how this case should be resolved after denying the — by a title, the trespassing, and the nuisance issues, the court said, your remedy is buy or sell. That simple. And that's a very reasonable response that respects the rights of the Lion's Club and respects the rights of the city. Needs to fix the — you know, it may have been 48, 45 years ago, but the city needs to correct its error and its wrongdoing in accepting this property. And to counsel's point that you'll be starting some new fight, no. Because the issue is cities should not accept property that have religious symbols on them. That was the — you know, that's the point that other cases like some have made, that cities don't have to accept donation or don't have to accept property that has a establishment clause violation. And that's the only way is that cities should control their own fate by rejecting such donations or purchases or whatever. I would point out as a matter of public policy to accept counsel's argument that somehow just because government acquires the property, then converts it to an establishment clause violation, which means that the whole — whatever the estate was is void, places a large target on religious institutions. For example, a church that has a long-term lease with a building, if the city at some point acquires that building, it could ignore the long-term lease because it's an establishment clause violation and simply void that contract without paying compensation to the church to relocate. I mean, that logic does not make sense. And for those reasons, I know I have time left, but I'll be quiet and sit down. Thank you. Thank you. We had a few minutes for a rebuttal. Judge Rawlinson, in response to your question, yes, this did appear to be a misunderstanding. We raised this on page 19 of our blue brief. It appeared that the district court misunderstood and thought that this was an exchange between private parties. And as we point out, that really is a misunderstanding because it didn't take effect until the close of escrow. So there was never this direct transaction between the calls and the Lions Club. It was all part of a multiparty transaction. Well, I thought that opposing counsel said in the Superior Court of California there was a listing of the recordations, and the first one was between private parties. Yeah, all that happened simultaneously under the... Okay. All right, and you were going to show me in the record where you made the argument regarding state actor. As I said, Your Honor, I did not say state actor at the district court. This is – I'm making that argument as an additional unforceability argument in response to the district court's opinion where they say that it keeps three times the establishment clause runs against the city, not a private party. And in response to Mr. Nichols' question, Cooper v. Post Office, Second Circuit, that Second Circuit directly enjoined this church organization from displaying certain religious items inside the contract postal statement. So just so I'm clear, you're making the argument to us in response to the district court's decision, but you didn't make the argument to the district court. That's – it wasn't really in play until the district court said that this – because that was a novel thing, the idea that we didn't see the Lions Club say, well, it's a state actor. So you're making – Lions Club initially resisted the idea there was an establishment clause violation. You can see that in the district court briefs. So it was a bit of a surprise to us, this idea that came out of nowhere in the opinion that the establishment clause runs against the city, but not the Lions Club. The – Ginsburg-Coper, how could it run against the Lions Club? Because they are – well, for one thing, they're a state actor, just like that – Okay. If we disagree with you regarding the Lions Club being a state actor, the establishment clause would not run against them. Is that correct? Well, also, remember, you should start with the no-aid and no-preference clauses. But, yes, if you disagree on all of those, then they wouldn't – it wouldn't really matter if they're a state actor, because there wouldn't be an underlying constitutional violation. Well, there would be if the city owns the property, and if the Lions Club is not a state actor, there still would be an establishment clause problem, but it would be against the city and not against the Lions Club. There would be an unenforced obligement under Baccus and Ferlati. And in – one thing about condemnation, it's uncertain how this would even happen. It could be considered to be trying to squelch religious speech. It could be challenged under any number of ways. I don't know how the condemnation proceeding would go, and I hope you don't put us through it. Would you just clarify one point for me? Was the Lions Club part of the escrow? No, they were not. But the Lions – but Hubert Call was both the owner of the parcel, a Lions Club member, and a city council member at the time. But the Lions Club was not in the escrow. They were not a party to the escrow. That's right. They got delivered a deed, but they did not have a – As a result – but as a result of the escrow, they got their easement. Right. And if I could just have one last hypothetical for you to think about. Imagine that all of this happens on September 1 after the escrow. There was never any easement in the escrow. On September 1, the city council gives this very same easement to the Lions Club. What happens? Well, of course it's invalid. Then there's no question about it. The city is just taking – of real estate interests of the city, giving it for a sectarian purpose. Of course that's invalid. And it wouldn't ripen into an enforceable valid right a year later or 10 years later or 40 years later. So please consider what you would be doing if you enforce this easement and what you could expect in future cases. Okay. Thank you very much. We appreciate your arguments. Interesting case. The matter is submitted at this time.
judges: Paez, Rawlinson, Anello